**FEDERAL TRADE COMMISSION,**
**Plaintiff,**

**v.**

**PATRIOT ALCOHOL TESTERS, INC., d/b/a Patriot Industries; Patriot Industries, Inc.; and Anthony J. Prall, a/k/a Jay Prall, individually and as an officer and director of Patriot Alcohol Testers, Inc. and Patriot Industries, Inc., Defendants.**

**Civ. A. No. 91–11812–C.**

United States District Court,
D. Massachusetts.

July 14, 1992.

David M. Newman, F.T.C., San Francisco, Cal., for F.T.C.

Robert G. Clark, III, Office of Robert G. Clark, Jr., Brockton, Mass., Stephen J. Finta, Ft. Lauderdale, Fla., for Patriot Industries.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on a motion for partial summary judgment by the Plaintiff, the Federal Trade Commission ("FTC"), against Defendants Patriot Alcohol Testers, Inc. ("Patriot") and Anthony J.

Prall ("Prall"). Specifically, the FTC asserts that it is entitled to summary judgment with respect to the following two issues: first, whether certain representations made by or on behalf of Patriot constituted "unfair or deceptive acts or practices" in violation of section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1) (1988); and second, whether Defendant Prall can be held personally liable for these alleged violations.[1] For the reasons set forth below, the motion for partial summary judgment by the FTC should be granted in part and denied in part.

## I.

There is no dispute regarding the following facts. Patriot is a corporation organized and doing business under the laws of the Commonwealth of Massachusetts with a principal place of business in Massachusetts. Prall, a Massachusetts resident, is the president of Patriot and controlled its operations and policies. Beginning in 1988 and continuing thereafter, Patriot has been in the business of manufacturing and selling a coin-operated, blood alcohol measuring device known as the "Model 5000." Patriot marketed the Model 5000 as a business opportunity for potential distributors. Upon purchasing Model 5000s, a distributor could derive income from the devices by placing them in bars, nightclubs and restaurants for use by patrons. To use the device, patrons would deposit fifty cents, blow through a straw into the machine and then receive a reading as to their alcohol level. Patriot has sold these devices to distributors in many different states.

The dispute in the instant case primarily revolves around Patriot's promotional communications regarding its Model 5000. The FTC seeks summary judgment in connection with the following six representations made by or on behalf of Patriot: (1) that distributors' average income from the Model 5000 is $130 per week per device; (2) that distributors reasonably could expect to earn $350 per week per device in busy locations; (3) that the Model 5000 is maintenance-free; (4) that it is easy to place the Model 5000 in bars and other drinking establishments; (5) that bars and other drinking establishments are able to obtain substantial discounts on liability insurance based on their installation of alcohol testing devices like the Model 5000; and (6) that the Model 5000 provides an accurate measure of a user's blood alcohol level. In addition, the FTC seeks summary judgment on the issue of whether Prall can be held personally liable for alleged misrepresentations made by or on behalf of Patriot.

## II.

### A. Summary Judgment Standard

According to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine

---

1. In addition, the FTC seeks summary judgment on several issues about which there is no dispute. First, the FTC asserts that there is no genuine issue as to whether this Court has subject matter jurisdiction in the instant case, and the Court agrees. It has jurisdiction over the subject matter of the instant case under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1345 (United States agency as plaintiff). Second, the FTC asserts that there is no genuine issue as to whether the Court has personal jurisdiction over the defendants and whether the venue is proper. Defendants do not contest either assertion, and, pursuant to Fed.R.Civ.P.

12(h), Defendants therefore have waived any objection to personal jurisdiction or venue. Finally, the FTC asserts that there is no dispute as to whether the activities of the Defendants were in or affected interstate commerce, which is a prerequisite for finding that a violation of 15 U.S.C. § 45(a)(1) occurred. Again, Defendants do not contest the issue. Defendants acknowledge that they advertised and sold their product throughout the country. Therefore, the FTC is entitled to summary judgment on the question of whether Defendants' activities were in or affected interstate commerce.

issue of fact exists if the evidence is such that a reasonable finder of fact could find in favor of the nonmoving party. *Id.* In determining whether a genuine issue exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party satisfies this burden, the burden shifts to the opposing party to "present evidence from which a [finder of fact] might return a verdict in its favor." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514. To satisfy its burden, the nonmoving party must set forth specific facts and may not rely on general denials. *United States v. O'Connell*, 890 F.2d 563, 565 (1st Cir. 1989). Finally, "[a] trial judge may freely grant summary judgment on a non-jury issue if no dispute over material fact exists and a trial or hearing would not enhance its ability to decide the issue." *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 400–01 (1st Cir.1988).

### B. Alleged Misrepresentations

■ Section 5 of the FTC Act provides that "unfair or deceptive acts or practices in or affecting commerce are declared unlawful." 15 U.S.C. § 45(a)(1) (1988). To establish that an act or practice is "deceptive" under Section 5, the FTC must establish three required elements. First, The FTC must establish that there is a representation, omission, or practice. *In re Cliffdale Associates, Inc.*, 103 F.T.C. 110, 165 (1984). Second, the FTC must establish that the representation, omission or practice is likely to mislead consumers acting reasonably under the circumstances. *Id.* Third, the FTC must establish that the representation, omission or practice is material. *Id.*

The first element simply requires a showing that the defendant made some representation. With respect to the second element, a court must consider whether the representation is likely to mislead a reason-able consumer " 'by viewing it as a whole, without emphasizing isolated words or phrases apart from their context.' " *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1496 (1st Cir.1989) (quoting *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir.1976)). In addition, a court must focus on "[t]he impression created by the advertisement, not its literal truth or falsity . . . ." *Id.* (quoting *American Home Prods. Corp. v. FTC*, 695 F.2d 681, 686 (3d Cir.1982)). With respect to the third element, a material representation is one that "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cliffdale Associates*, 103 F.T.C. at 165. Express representations that are shown to be false are presumptively material. *See id.* at 168, 182.

■ Assuming the plaintiff satisfies the three elements, the fact that an advertiser may have acted without an intent to deceive is not a defense to a violation of 15 U.S.C. § 45(a)(1). *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir.1988) (citing *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir.1976)). Nor is an advertiser's good faith a defense to a violation of 15 U.S.C. § 45(a)(1). *Id.* (citing *Chrysler Corp. v. FTC*, 561 F.2d 357, 363 n. 5 (D.C.Cir.1977)).

Having thus set forth the standard for determining whether a given representation is deceptive under 15 U.S.C. § 45(a)(1), the Court now will consider each of the representations allegedly made by the defendants.

### 1. Average Weekly Income

■ With respect to the first prong of the standard, there is no genuine issue as to whether the defendants made the representation that distributors' average weekly income from the Model 5000 is $130 per device. The affidavits and exhibits submitted by the FTC reveal that the defendants ran an advertisement in *Entrepreneur Magazine* which claimed that the average machine earns $130 per week. In addition, the record shows that the defendants provided purchasers with a chart that projects earnings to distributors based on weekly

revenues per device of twenty-five dollars to $160. The chart states explicitly that the "reported national average" revenue per device is $130. Thus, with respect to the alleged representation that the average weekly income from the Model 5000 is $130 per device, the FTC has satisfied the first prong of the three-pronged standard, which, as noted above, requires a showing of a representation, omission or practice.

The second prong of the standard requires the FTC to show that the representation is likely to mislead consumers acting reasonably under the circumstances. *Cliffdale Associates*, 103 F.T.C. at 165. Based on the record before this Court, the claim that the Model 5000 earns an average of $130 per week per device appears to have been an exaggeration. Even if the Court were to disregard the affidavits submitted by the FTC and take into consideration only the affidavits submitted by the defendants, and even viewing those affidavits in the light most favorable to the defendants,[2] the Court finds that the average income derived from the Model 5000 would be approximately forty-nine dollars per week per device. No affidavit submitted by the Defendants reported an average weekly income per device of greater than $100. If the FTC's affidavits were taken into consideration, the average would drop substantially lower; the highest average weekly income per device reported in the FTC's affidavits was twenty dollars. Thus, given the wide disparity between Defendants' representations regarding the device's average weekly income and the actual earnings of distributors who submitted affidavits, the only conclusion that a reasonable finder of fact could reach is that the representations were false and likely to mislead consumers acting reasonably under the circumstances. Accordingly, the FTC has satisfied the second prong of the standard.

The third element, as noted previously, requires the FTC to show that the repre-

sentation is material. *Cliffdale Associates*, 103 F.T.C. at 165. Express representations that are shown to be false are presumptively material. *See id.* at 168, 182. In the instant case, Defendants' representation that Model 5000s earn an average of $130 per week per device was express, and the Court has concluded that there is no genuine issue of fact that the representation is false. Therefore, the representation is presumptively material. Thus, the FTC has satisfied all three of the required elements for establishing that the representation is deceptive under 15 U.S.C. § 45(a)(1). The Court concludes, then, that there are no genuine issues of material fact concerning Defendants' representation that Model 5000s earn an average of $130 per week per device. Accordingly, the FTC is entitled to summary judgment that this representation is deceptive in violation of 15 U.S.C. § 45(a)(1).

2. $350 Per Week in Busy Locations

The materials submitted by the FTC show that the Defendants represented that the Model 5000 earns up to $350 per week per device in busy locations, and Defendants admit having made such representations. As is evident from the discussion in the previous section, no distributor whose affidavit is on file ever had earnings that even came close to $350 per week per device. The highest average weekly earnings reported in the affidavits submitted by either party was $100 per device. Thus, for the same reasons that the Court concluded that the FTC is entitled to summary judgment with respect to the Defendants' representation that the Model 5000 earns an average weekly income of $130 per device, the Court concludes there is no genuine issue of material fact that the claim that the Model 5000 earns up to $350 per week per device in busy locations is false, likely to mislead consumers acting reasonably under the circumstances, and material. The FTC, then, is entitled to summary judg-

---

**2.** In instances where an affidavit of a distributor provided a range of values for the distributor's average weekly income per device, the Court's calculations used the highest value available. For example, one distributor's affidavit, which was submitted by the defendants, indicated that

his average weekly income per machine ranged from $25 to $80. Affidavit of Russell Fowler ¶ 11. In that instance, the Court disregarded the lower value and assumed that the distributor's average weekly income was $80 per machine.

ment that this claim is deceptive in violation of 15 U.S.C. § 45(a)(1).

### 3. Maintenance–Free Product

■ There is no genuine issue that the Defendants' promotional literature, some of which was submitted by the FTC as exhibits, made representations concerning the reliability of the Model 5000. For example, one piece of literature asserted:

All that is necessary is to fill the straw dispenser, wipe off the unit with Windex, and every month or so check the built-in calibration software. If an adjustment is needed, no extra equipment is needed other than a small screwdriver. The unit features computer-activated self-calibrating software for your convenience and years of maintenance-free, easy operation.

FTC Exhibit 2, ¶ 3; FTC Exhibit 12 at 2. Another piece of promotional literature claims that the product's "[m]aintenance-free design with built-in self-calibrating software offers years of trouble-free service featuring one button operation for self-diagnostic circuitry. The Model 5000 is engineered to provide years of reliable service and earnings for you." FTC Exhibit 24. Thus, because the Defendants made representations concerning the "maintenance-free" qualities of the product, the FTC has satisfied the first prong of the three-pronged standard.

Whether the FTC has satisfied the second prong, however, is less clear. The second prong, as noted previously, requires the FTC to establish that the representation would mislead consumers acting reasonably under the circumstances. *Cliffdale Associates*, 103 F.T.C. at 165. The FTC appears to interpret the representations quoted above as communicating express guarantees that the Model 5000 is literally maintenance-free—that it requires absolutely no maintenance. But viewing each representation as a whole and considering the phrase "maintenance-free" in context rather than in isolation, *see Removatron*, 884 F.2d at 1497, the Court can not conclude that reasonable consumers would adopt the interpretation suggested by the FTC.

In the first quoted excerpt, in the sentences prior to the one containing the phrase "maintenance-free," the promotion indicates that the Model 5000 may require an adjustment from time to time. The promotion suggests that the product's calibration software should be checked "every month or so," and that, "[i]f an adjustment is needed, no extra equipment is needed other than a small screwdriver." As a whole, this promotion creates the impression that the Model 5000 is designed to require very little attention, and that one reasonably could expect that it would operate with a minimum of trouble. But the promotion can not reasonably be interpreted as conveying that the product would never malfunction.

The language in the second quoted excerpt is somewhat stronger. It states that the machine should "offer years of trouble-free service." But the most reasonable interpretation of this promotion is that it makes a representation regarding a design goal of the product. It states that the product has a "maintenance-free" design, and that the product "is engineered to provide years of reliable service." A reasonable consumer would not interpret this language as representing that this seemingly complex device would be absolutely maintenance-free and that it would never malfunction. Instead, like the first promotion, the second promotion conveys that one reasonably could expect that the Model 5000 should operate with a minimum of trouble.

Having determined what these promotions would mean to a reasonable consumer, the Court now must determine whether that meaning would be likely to mislead consumers acting reasonably under the circumstances. To do so, the Court must consider the actual performance of the product to determine whether or not they operate with a minimum of trouble as the promotions suggest. To be sure, many of the affidavits submitted by the FTC report reliability and maintenance problems. Most of the Defendants' affidavits, however, report satisfactory reliability. Thus, the Court concludes that there is a genuine issue of fact as to the product's

true track record with respect to reliability and maintenance. The Court, then, is not in a position to determine whether the representations regarding reliability and maintenance were likely to mislead consumers acting reasonably under the circumstances. Therefore, the FTC is not entitled to summary judgment that the Defendants' representations regarding reliability and maintenance were deceptive in violation of 15 U.S.C. § 45(a)(1).

### 4. Ease of Placement

■ There is no genuine issue that the Defendants made representations concerning the ease with which distributors could convince bar and restaurant owners to have Model 5000s placed at their establishments. For example, the Defendants' promotional materials represented that the Model 5000 "is not a difficult machine to place." FTC Exhibit 12 at 4. In addition, Defendants claimed that the product "sells itself! Quick referral builds your route overnight." FTC Exhibit 12 at 1. Another promotional piece referred to the "UNIVERSAL ACCEPTANCE by locations."

As for the second element, however, there is a genuine issue of fact as to whether these representations were likely to mislead consumers acting reasonably. Like the product's track record regarding maintenance and reliability, the evidence concerning the product's ease of placement is mixed. Some distributors' report in their affidavits of having had great difficulty finding locations that would accept placement of the Model 5000. Many other distributors, however, report having had no difficulty. Thus, there is a genuine issue of material fact as to whether the Defendants' representations regarding ease of placement were misleading, and, therefore, the FTC is not entitled to summary judgment with respect to these representations.

### 5. Insurance Discounts

■ There is no genuine issue that Defendants represented that bars and other drinking establishments are able to obtain substantial discounts on their liability insurance based on their installation of alcohol testing devices. The claim appears in several places in Defendants' promotional literature. For example, one promotion claims that the Model 5000 "reduces owners' liquor liability up to 10–40 percent." FTC Exhibit 12 at 1. Another promotion claims that bar owners "can be eligible for a discount on their liability insurance of up to 40 percent." *Id.* at 4. The Defendants also represented that "liquor liability insurance can be lowered automatically by ten percent when operators provide alcohol testers to patrons, and when they encourage bartenders to use the machines when in doubt about a customer's sobriety." The FTC, then, has established that a representation was made and has thus satisfied the first prong of the three-pronged test.

Nor is there a genuine issue of material fact with respect to the second prong. The Defendants' representations regarding insurance discounts would mislead consumers acting reasonably under the circumstances because the representations were clearly false, as the following uncontroverted facts indicate. Representatives of two of the insurance companies that purportedly were granting the discounts stated in their affidavits that their companies never offered discounts to bars having alcohol testing devices on their premises. In actuality, one insurance agent used lists of bars that had installed alcohol testing devices, such as the Model 5000, as a source of leads to sell liability insurance. Affidavit of Dan Dowling ¶ 6–9. The agent sought to locate less expensive liability policies for his customers by carefully shopping among the companies that write insurance policies for drinking establishments. *Id.* ¶ 5. The reduced rates were entirely the result of careful shopping, and were unrelated to the installation of an alcohol tester on the premises. *Id.* Thus, the Court concludes that there is no genuine issue that these representations were false and likely to mislead consumers acting reasonably under the circumstances. Moreover, since the representations have been found to be false, they are presumptively material. *See Cliffdale Associates,* 103 F.T.C. at 168. Therefore, the FTC has satisfied the third prong as well as the second.

The Defendants argue, nevertheless, that their representations regarding insurance discounts do not violate the FTC Act. They claim that they merely repeated representations made to them by insurance agents and companies. In essence, Defendants argue that they did not know that the representations were false. But a violation of 15 U.S.C. § 45(a)(1) can occur even absent an intent to deceive, and an advertiser's good faith does not shield it from liability. *World Travel Vacation*, 861 F.2d at 1029. Therefore, the fact that Defendants may have unknowingly repeated the misrepresentations of others is not material. The FTC is thus entitled to summary judgment that Defendants violated 15 U.S.C. § 45(a)(1) by representing that drinking establishments are able to obtain substantial insurance discounts based on the installation of alcohol testing devices.

### 6. Accuracy

■ The FTC also claims that Defendants represented that the Model 5000 reliably provides an accurate measure of the user's blood alcohol level. With respect to the representations concerning accuracy, however, the FTC only seeks summary judgment on the issues of whether such representations were made and whether they were material. The FTC is not now seeking summary judgment as to whether such representations violated the FTC Act's prohibition against deceptive acts or practices.

Based on the materials submitted by the FTC, there is virtually no doubt that the Defendants represented that the Model 5000 is accurate. The Defendants' promotional materials include several such representations, including the following examples: "the Patriot 5000 is accurate to within .01% of the models law enforcement agencies use," FTC Exhibit 2; "the Model 5000 is designed to be used as a serious instrument to measure one's degree of sobriety," *id.;* "[s]tate-of-the-Art Technology that accurately indicates your alcohol level," FTC Exhibit 6 at 6. The Defendants do not dispute that they made these representations. Therefore, there is no genuine issue of fact concerning whether Defen-

dants represented that the Model 5000 is accurate.

The Court also concludes that these representations were material. As noted previously, a representation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cliffdale Associates*, 103 F.T.C. at 165. The product's accuracy is central to the distributor's ability to place the product in business establishments. Accordingly, the question of whether the product is accurate very likely affects distributors' decisions to purchase the product. Thus, the FTC is entitled to summary judgment that Defendants represented that the Model 5000 reliably provides an accurate measure of the user's blood alcohol level, and that such representations were material.

### C. Defendant Prall's Liability

■ Having determined that the FTC is entitled to summary judgment that certain representations made on behalf of Patriot violated the FTC Act's prohibition against deceptive acts or practices, the Court now may consider the final question in the FTC's motion for partial summary judgment: whether Defendant Prall can be held liable personally liable for those violations. To hold an individual liable for the deceptive acts or practices of a corporate entity, the FTC must establish the following three required elements: first, the FTC must prove that the individual had knowledge that the corporation engaged in dishonest or fraudulent conduct; second, the FTC must prove that the individual participated in the acts or had authority to control the conduct; and third, the FTC must show customer reliance. *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir.), *cert. denied*, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); *FTC v. Sharp*, 782 F.Supp. 1445, 1450 (D.Nev.1991); *FTC v. Kitco of Nevada, Inc.*, 612 F.Supp. 1282, 1292 (D.C.Minn.1985).

■ The FTC may fulfill the first required element, which pertains to the individual's knowledge, " 'by showing that the individual had actual knowledge of material misrepresentations, reckless indiffer-

ence to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth.' " *Amy Travel*, 875 F.2d at 574 (quoting *Kitco*, 612 F.Supp. at 1292). In the instant case, Prall admits that he placed advertisements in *Entrepreneur Magazine* and other publications. *See* Affidavit of Anthony Prall ¶ 4. These advertisements claimed, among other things, that each Model 5000 generates an average weekly income of $130, and that it generates as much as $350 per week in busy locations. As the Court noted above, however, customers who submitted affidavits, including customers whose affidavits were submitted by the Defendants, reported average weekly incomes of much less than $130 per device, and no affiant reported a weekly income greater than $100. This disparity between the representations and the actual earnings of people who purchased the product indicates that there is no genuine issue of fact that Defendant Prall, at a minimum, acted with reckless indifference to the truth or falsity of the representations concerning the income potential of the product. Thus, the FTC has satisfied the first required element for holding Defendant Prall personally liable for these misrepresentations.[3]

The FTC also has satisfied the second element, which, as mentioned above, requires a showing that the individual participated in the acts or had authority to control the conduct. As mentioned above, Prall admitted placing the advertisements concerning average weekly income, which the Court has found misleading. In addition, there is uncontroverted evidence that he made the same or similar representations in one-on-one conversations with customers. Declaration of Hans E. Keller ¶ 12; Declaration of Carl M. Ragland ¶ 8. Furthermore, Prall admitted in his answer

"that he is the president of Patriot Alcohol Testers, Inc. and that he has formulated, directed, controlled and participated in the acts and practices of the company." Answer ¶ 6. Thus, there is no genuine issue of fact that Prall directly participated in the deceptive conduct.

■ Finally, to satisfy the third element, which pertains to customers' reliance, the FTC need not prove subjective reliance by each customer. *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir.1991). Instead, the FTC must satisfy the following standard, which itself has three elements: first, the FTC must show that the misrepresentations were of a kind usually relied upon by reasonable and prudent persons; second, the FTC must show that the misrepresentations were widely disseminated; and third, the FTC must show that the injured consumers actually purchased the defendants' products. *Id.* Once the FTC satisfies this test, the burden then shifts to the defendant to prove that the misrepresentations were not relied upon. *Kitco*, 612 F.Supp. at 1293.

■ There is no genuine issue as to any of the three prongs of the third required element. First, the representations concerning the income potential of the Model 5000 were of a kind usually relied upon by reasonable and prudent persons. By claiming that the $130 weekly income figure was the "national average," the representations created the impression that the figure was based upon an actual, legitimate study. Moreover, the question of income potential clearly is a key factor in a consumer's decision regarding a money-making opportunity. *See Security Rare Coin*, 931 F.2d at 1316. Thus, it was reasonable for consumers to rely on these representations.

---

**3.** Although the Court concludes that the FTC has satisfied the knowledge element with respect to Prall's personal liability for misrepresentations concerning the average income of the Model 5000, there are genuine issues of fact as to Prall's knowledge about representations concerning insurance discounts. Although, as noted previously, Prall's purported good-faith belief about the validity of the representations con-

cerning insurance discounts is not material in determining whether such representations violate 15 U.S.C. § 45(a)(1), it is material in determining whether he can be held personally liable for such representations. Thus, the FTC is not entitled to summary judgment that Prall is personally liable for the misrepresentations concerning insurance discounts.

Second, there is no genuine issue that the representations concerning average weekly income and income potential were widely disseminated. Prall acknowledges that these representations were made public through advertisements that appeared in *Entrepreneur Magazine* and elsewhere. Third, there is no genuine issue that injured consumers purchased the Model 5000, as borne out by many of the affidavits submitted by the FTC. *E.g.*, Declaration of Charles S. Crane; Declaration of Cheryl Fischer; Declaration of Hans E. Keller; Declaration of Bruce Michaud. Thus, the FTC has satisfied its burden with respect to all three prongs of the third required element for holding Prall personally liable.

The burden now shifts to Prall to show that the misrepresentations were not relied upon by his customers. Prall's opposition, however, does not point to evidence that would be sufficient to create a genuine issue of fact regarding consumers' reliance. Accordingly, the FTC is entitled to summary judgment that Defendant Prall is personally liable for misrepresentations concerning the average income and income potential of the Model 5000.

In conclusion, the motion by the FTC for partial summary judgment should be granted in part and denied in part.

Order accordingly.

### ORDER

In accordance with the Memorandum signed on this date, it is hereby ORDERED:

The motion for partial summary judgment by plaintiff Federal Trade Commission is granted in part and denied in part. The Federal Trade Commission is entitled to summary judgment that:

1. this Court has subject matter over the instant case;

2. this Court has personal jurisdiction over the parties to the action;

3. venue in the District of Massachusetts is proper in the instant case;

4. the activities of the defendants are in or affect interstate commerce;

5. Defendants violated 15 U.S.C. § 45(a)(1) by misrepresenting that distributors' average income from defendants' alcohol testing devices is $130 per week per device;

6. Defendants violated 15 U.S.C. § 45(a)(1) by misrepresenting that distributors reasonably could expect to make $350 per week per device in busy locations;

7. Defendants violated 15 U.S.C. § 45(a)(1) by misrepresenting that bars and other drinking establishments are able to obtain substantial discounts on their liability insurance based on their installation of alcohol testing devices like defendants';

8. Defendants made the material representation that their alcohol testing devices accurately measure the user's blood alcohol level;

9. Defendant Prall is personally liable for the misrepresentations concerning the average income and potential income of the Model 5000.

The motion for partial summary judgment by plaintiff Federal Trade Commission is denied with respect to the following matters:

1. Defendants' representations concerning the maintenance and reliability of their product;

2. Defendants' representations concerning the ease with which their product may be placed in bars and other drinking establishments.