**Supreme Court**

No. 2012-248-Appeal.
No. 2012-249-Appeal.
(PB 03-2636)

Nicholas T. Long et al.          :

v.          :

Dell, Inc., et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2012-248-Appeal.
No. 2012-249-Appeal.
(PB 03-2636)
(Dissent and concurrence begin on Page 28)

Nicholas T. Long et al.               :

v.               :

Dell, Inc., et al.               :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  In this putative class action, the plaintiffs allege that Dell[1] violated the Deceptive Trade Practices Act (DTPA), G.L. 1956 chapter 13.1 of title 6, and that Dell was negligent by improperly collecting sales taxes on certain services purchased in conjunction with the sales of its computer products.  A justice of the Superior Court granted summary judgment in favor of Dell on both counts.  This case has been pending for more than ten years and thus far has resulted in two opinions of this Court.  It is not over.  For the reasons set forth below, we affirm the grant of summary judgment on the negligence count and on the request for injunctive relief by the plaintiff, Nicholas T. Long.  However, the grant of summary judgment on the DTPA count by the plaintiff Julianne Ricci is vacated.  Additionally, we affirm

---

[1] The named defendants are Dell Computer Corporation, Dell Catalog Sales Limited Partnership, Dell Marketing Limited Partnership, QualxServ, LLC, and BancTec, Inc.  The nuances of the legal relationships among these entities were discussed in our previous opinions in this case.  See Long v. Dell, Inc., 984 A.2d 1074, 1076 (R.I. 2009); DeFontes v. Dell, Inc., 984 A.2d 1061, 1062 (R.I. 2009).  In this opinion, "Dell" and "defendants" refer to the collective Dell entities (Dell Computer Corporation, Dell Catalog Sales Limited Partnership, and Dell Marketing Limited Partnership).

- 1 -

the Superior Court justice's grant of the plaintiffs' motion to strike the tax administrator's affirmative defenses.[2]

**Facts and Travel**

This Court discussed the facts of this case in detail in two previous opinions. See Long v. Dell, Inc., 984 A.2d 1074, 1075-78 (R.I. 2009); DeFontes v. Dell, Inc., 984 A.2d 1061, 1062-65 (R.I. 2009). Therefore, we will only recount recent events and those facts that are necessary for context.

The named plaintiffs, Nicholas Long (Long) and Julianne Ricci (Ricci) (collectively and on behalf of the putative class, plaintiffs), purchased Dell computers in late 2000. Along with their computers, they also selected an optional service contract, which essentially amounted to an extended warranty on the computers.[3] As the receipt for payment, Ricci received a three-page "acknowledgment" with her order. The first item listed on the acknowledgement is a "Dimension 4100 Series, Pentium Processor at 866 MHz"—presumably the main computer component. The "Unit Price" and "Amount" set forth for this item were both "1,576.00." The next thirty lines in the acknowledgement contained different item numbers and product descriptions, all of which set forth the "Unit Price" and "Amount" as "0.00." Finally, a printer cable was listed with a "Unit Price" and "Amount" of "24.95." A box on the front page of the acknowledgement summarized the charges. The computer, the printer cable, and a shipping and handling charge of $105 brought the subtotal to $1,705.95. The box also set forth that $233 of that amount was taxable, and thus a tax of $16.31 was added. The total paid by Ricci to Dell was $1,722.26. Ricci purchased her computer for personal use.

---

[2] We consolidate the two appeals for purposes of this opinion.

[3] These service contracts were actually third-party contracts, whereby third parties, including defendants BancTec and QualxServ, would handle any repairs. Long, 984 A.2d at 1076.

Long received a similar "acknowledgment" with his order. Only the first line contained a "Unit Price" and "Amount"—both were "2,804.00." The summary box added a shipping and handling charge of $35 for a subtotal of $2,839. The box denoted that the entire $2,839 subtotal was taxable and charged $198.73 in tax. Thus, Long ultimately paid a total of $3,037.73 to Dell. Unlike Ricci, Long purchased his Dell computer for business purposes.

This class action lawsuit commenced in May 2003.[4] The crux of the complaint is that Dell charged both Ricci and Long sales tax on nontaxable services.[5] The two-count complaint alleged that defendants violated the DTPA and were liable for negligence. In their prayer for relief, plaintiffs requested damages, as well as declaratory and injunctive relief. The defendants moved to stay the proceedings and compel arbitration, arguing that by accepting delivery of the goods, plaintiffs agreed to the terms and conditions agreement, which contained an arbitration provision. The Superior Court justice denied that motion and entered an order of final judgment on March 29, 2004. The defendants appealed from that judgment.

In March 2005, Dell requested a determination from the Rhode Island Division of Taxation regarding the application of the sales and use tax. The Division of Taxation responded with a letter ruling.[6] The letter ruling, which was written by the Chief Revenue Agent, began its

---

[4] Mary DeFontes initially filed this action, but she is no longer a plaintiff. See DeFontes, 984 A.2d at 1062, 1072. Long joined the suit as a plaintiff in July 2003. Id. at 1062. Ricci replaced DeFontes in June 2005, upon discovery that DeFontes was an employee of plaintiffs' counsel. Id. at 1065.

[5] There is no allegation that Dell retained the tax collected; it is undisputed that Dell remitted the tax collected to the state.

[6] The Division of Taxation describes a "letter ruling" as follows:

"A General Informational Letter, (commonly referred to as a 'Letter Ruling') is unlike a Declaratory Ruling in that it generally seeks an interpretation of tax law or regulation without applying it to a specific set of facts. A General Informational Letter may be issued where it appears that general information only

discussion by referencing Regulation SU 00-126, entitled "Optional Service, Maintenance, and Extended Warranty Contracts," which stated, inter alia, that "[t]he charge for the optional service, maintenance, or extended warranty contract is not subject to tax when such a charge is separately stated by the retailer to the purchaser." The letter stated that "[t]he intent of the regulation is to exempt an optional service, maintenance, and extended warranty contract from sales tax when the contract is optional to the buyer, and the charge is separately stated by the retailer to the purchaser." Initially, the ruling stated that when a Dell invoice or acknowledgment "provided to a customer showed a total sales price for all items in the order and a unit price of '0.00['] for each individual item, including the service contract and extended warranty, the sales tax was properly applied to the total sales price." Directly applying the facts here, however, the letter concluded, "Since the service contract is optional to the buyer and a separate charge under 'taxable amount' is noted elsewhere on the invoice or acknowledgement as being for a 3rd party service contract, [Dell] Catalog should not have imposed the sales tax."

In March 2007, while the appeal of the order denying the motion to compel arbitration was pending, defendants moved for summary judgment. In response, plaintiffs requested that the Tax Administrator for the Rhode Island Division of Taxation (the tax administrator) be notified of the proceeding because defendants' contentions on summary judgment implicated Rhode Island tax law. The tax administrator then moved to intervene in the case. The Superior Court justice permitted the tax administrator to intervene solely "for the purpose of appearing and

is requested, or where a request for a Declaratory Ruling does not comply with all the requirements for a Declaratory Ruling. General Informational Letters may not be relied upon by any taxpayer other than the taxpayer who requested the information. General Informational [L]etters are not binding on the Tax Division if there has been a misstatement or omission of material facts or, on a prospective basis, if there has been a change in law or applicable regulations or a decision on point is issued by the Rhode Island or Federal Courts." Regulation DR 03-01.

being heard on the issues of subject matter jurisdiction, the proper interpretation and construction of tax regulations and statutes, and the application and constitutional validity of tax statutes." The tax administrator moved to dismiss the case for lack of subject-matter jurisdiction. The Superior Court justice denied the motion to dismiss. The defendants and the tax administrator petitioned this Court for writs of certiorari to review the question of subject-matter jurisdiction, and we granted the petitions.

On December 14, 2009, this Court issued separate opinions on these preliminary issues. In DeFontes, 984 A.2d at 1073, we held that the Superior Court justice properly denied defendants' motion to compel arbitration because plaintiffs did not agree to be bound by the terms and conditions in the shrinkwrap agreement contained in the computer's packaging. In Long, 984 A.2d at 1081, we held that that the Superior Court had subject-matter jurisdiction over the DTPA claim and ancillary jurisdiction over the negligence claim. We remanded the case to the Superior Court. Id. at 1082.

With the arbitration and subject-matter jurisdiction issues resolved, the Superior Court turned to defendants' summary judgment motion. First, the Superior Court justice decided to consider only the facts and claims of the individual plaintiffs—not the purported class of plaintiffs—because the class had not yet been certified. Additionally, he noted that after his previous decision and this Court's opinions, the only claims that remained as to Long were those seeking equitable or declaratory relief because Long's claims under the DTPA and for negligence had been dismissed. Addressing those claims, the Superior Court justice concluded that the prayer to enjoin defendants from collecting improper taxes was moot because there was no evidence to suggest that defendants continue to improperly collect the tax. Accordingly, for purposes of summary judgment, the Superior Court justice considered "only the claims of

improper collection of tax on the optional service contract, as evidenced in Ricci's acknowledgment of her purchase of a Dell computer, and the facts associated therewith."

Next, the Superior Court justice concluded that Ricci should not have been charged a sales tax on her service contract. Although service contracts were not taxable in Rhode Island, Dell contended that Rhode Island Tax Regulation SU 00-126, which provided that "[t]he charge for the optional service, maintenance or extended warranty contract is not subject to tax when such charge is separately stated by the retailer to the purchaser," nonetheless mandated that a tax be charged because Dell contends the "acknowledgement" it sent to Ricci did not separately state the service contract price. However, in its 2005 letter ruling, the Division of Taxation concluded that Dell's "acknowledgement" did, in fact, separately state the service contract price, and Dell should not have taxed the service contract. Based on the letter ruling, the tax regulation, and the opinions of this Court, in particular language from our opinion in Long, the Superior Court justice found that Dell improperly charged Ricci $16.31 in sales tax on the optional service contract.

Having concluded that Ricci was improperly taxed, the Superior Court justice next addressed Dell's legal arguments that it was nonetheless not liable under the DTPA or in negligence.[7] Addressing the negligence claim, he concluded that "[a] seller's duty with regard to the collection of sales tax is to the State, not the consumer." He reasoned that the seller is subject to state penalties for failing to properly remit sales taxes to the state. Further, he noted that there is little incentive for a seller to over-collect taxes. Comparatively, any injury to a consumer is relatively minor. Finally, consumers now have an independent right to seek a

---

[7] The trial justice concluded that three other theories—DTPA exemption for collection of sales tax, sovereign immunity, and unclean hands—did not preclude Dell's potential liability to Ricci. Dell did not raise these issues on appeal.

refund if they are inappropriately taxed. Accordingly, the Superior Court justice concluded that Dell did not owe a duty to Ricci, and therefore Ricci did not have an actionable tort claim.

Turning to the DTPA claim, the Superior Court justice first addressed whether the practice was "unfair." The court concluded that "Dell's honest misinterpretation of a delicate area of the state tax law cannot be held to be an unfair act." The Superior Court justice noted that Ricci did not come forth with any evidence tending to prove that Dell acted immorally or unethically. He also questioned whether Ricci's monetary injury of $16.31 was "substantial." Next, the court addressed whether Dell's actions were "deceptive" under the DTPA. Although the Superior Court justice found that charging a sales tax constituted a representation that was misleading, he concluded that the misrepresentation was not "material" to constitute a deceptive act under the statute because it was so paltry as to have no effect on Ricci's decision to purchase the product.[8] Accordingly, the court concluded that "as a matter of law, Dell's actions did not constitute negligence or violate the DTPA."

In the same decision, the Superior Court justice also addressed plaintiffs' motion to strike the tax administrator's affirmative defenses.[9] Noting that no claims had been asserted against the tax administrator and that the conditions precedent to the allegedly conditional defenses had not arisen in this case, the Superior Court justice struck the defenses as immaterial under Rule 12(f) of the Superior Court Rules of Civil Procedure.

On April 9, 2012, an order and final judgment entered, granting defendants' motion for summary judgment and plaintiffs' motion to strike. The plaintiffs appealed the order granting

---

[8] The Superior Court justice drew this conclusion from Ricci's deposition testimony, where she stated that she did not care about the sales tax, only the total price of the computer.

[9] The affirmative defenses were (1) statute of limitations; (2) unclean hands; (3) "he who demands equity must do equity"; (4) setoff and recoupment; (5) statutory setoff; (6) failure to state a claim upon which relief may be granted; and (7) failure to exhaust administrative remedies.

summary judgment to defendants, and the tax administrator appealed the order striking his affirmative defenses.

## Standard of Review

"[T]his Court reviews a grant of summary judgment de novo." Sullo v. Greenberg, 68 A.3d 404, 406 (R.I. 2013) (quoting Sacco v. Cranston School Department, 53 A.3d 147, 149-50 (R.I. 2012)). We examine the case "from the vantage point of the trial justice who passed on the motion for summary judgment, [and] '[w]e view the evidence in the light most favorable to the nonmoving party * * *.'" Id. (quoting Sacco, 53 A.3d at 150). In performing this review, we draw all reasonable inferences in favor of the nonmoving party. See Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 424-25 (R.I. 2013) (noting that "the facts and all reasonable inferences therefrom" are viewed "in the light most favorable to the nonmoving party") (quoting Derderian v. Essex Insurance Co., 44 A.3d 122, 126-27 (R.I. 2012)). "Ultimately, the 'purpose of the summary judgment procedure is issue finding, not issue determination.'" DeMaio v. Ciccone, 59 A.3d 125, 130 (R.I. 2013) (quoting Estate of Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I. 2008)). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as [a] matter of law." Sola v. Leighton, 45 A.3d 502, 506 (R.I. 2012) (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005)). If the evidence submitted permits an inference that creates a genuine issue of material fact, the motion must be denied. See DeMaio, 59 A.3d at 132 (holding that a Superior Court justice may not choose between conflicting inferences at summary judgment stage). "[S]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Cruz v. DaimlerChrysler Motors Corp., 66 A.3d 446, 451 (R.I. 2013) (quoting DeMaio, 59 A.3d at 129).

- 8 -

Furthermore, this case presents the issue of whether, for purposes of a motion for summary judgment, the Court should treat the alleged class as certified, or whether the Court should only consider the facts pertaining to the named plaintiffs.[10] At the outset of his analysis, the Superior Court justice stated, "Because the class is not certified, this Court will consider the [m]otion on the facts and claims of the individually-named Plaintiffs, and not those of any purported class." The defendants contend that this is the correct approach and cite federal case law purporting to support that proposition. The plaintiffs, however, argue that the Court must treat the class as certified because the Court views the evidence in the light most favorable to the nonmoving party at the summary judgment stage.

This Court previously has stated that, "[b]ecause we review this evidence in the light most favorable to plaintiffs [i.e., the nonmoving party], to the extent that it relates to our decision, we treat this case as though it were certified as a class action." Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666, 679 n.12 (R.I. 2004). We adhere to that reasoning in the case at bar. Such a rule is most consistent with our summary judgment jurisprudence, which requires that, when performing de novo review, we view the evidence in the light most favorable to the nonmoving party. See Sullo, 68 A.3d at 406. Furthermore, this approach promotes the class action objectives of compensation for small injuries and efficiency. See 1 William B. Rubenstein, Newberg on Class Actions § 1:7 at 17-21 (5th ed. 2013) (noting that, when individual claims are for small amounts of money, a class action is the only practical means to

---

[10] The defendants contend that plaintiffs waived this issue by failing to claim it as a ground of error in their opening brief. We disagree. Although plaintiffs did not address the issue in the context of the standard of review, they did contend that it was "plain error" for the Superior Court justice to question whether the improperly charged sales tax caused substantial injury because the class had not been certified; for this proposition, plaintiffs cited Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666, 679 n.12 (R.I. 2004). Thus, we are satisfied that plaintiffs sufficiently raised the issue, and it is appropriately before the Court.

seek compensation); id. § 1:9 at 26 ("Aggregate litigation promotes administrative efficiency."). This principle of treating the class as certified, however, does not mean that a plaintiff can simply multiply a small injury to an individual plaintiff by a large number with no basis in fact. There must be evidence in the record from which a factfinder could infer facts that may apply class-wide.

The legal basis underpinning the cases cited by defendants is that a precertification ruling does not bind absent class members. While that is true, we decline to draw the conclusion that such a rule then compels this Court to disregard the procedural standard when confronted with a summary judgment motion. The question of who will be bound by a judgment is markedly different from the question of what is the appropriate decisional standard. Furthermore, none of the cases cited by defendants addresses the unique summary judgment issue that confronts us in this case. In Lewis v. Casey, 518 U.S. 343, 357-58 (1996), the United States Supreme Court merely commented that the named plaintiffs in a class action must have standing. Also, the Court was reviewing a bench trial; it was not reviewing a summary judgment ruling. Id. In Jackson v. Resolution GGF Oy, 136 F.3d 1130, 1132 (7th Cir. 1998), the Seventh Circuit dismissed a defendant because no individual plaintiff had standing against that defendant; again, the summary judgment standard was not a concern. Finally, defendants cite a quote from an unreported trial court decision, Evans v. Taco Bell Corp., CIV. 04CV103JD, 2005 WL 2333841, at *3, *4 (D.N.H. Sept. 23, 2005), that was made in the context of a motion to strike. There, the court refused to consider a doctor's affidavit that contained a medical opinion regarding a person who was not a plaintiff because the class was not yet certified. Id. at *4. Although the court in Evans went on to address a summary judgment motion, the relevant issue in that case was direct evidence submitted regarding a nonparty in an uncertified class action. Id. Treating a class as

certified for summary judgment purposes—and thus permitting an inference of class-wide injury from facts in the record—is different from submitting evidence regarding a specific person or entity that is not a party to the case.

We pause to note that the timing of class certification is a complex question which depends on the circumstances of each case. See 3 William B. Rubenstein, Newberg on Class Actions § 7:8 at 38 (5th ed. 2013) ("Given that policy concerns cut different ways in different circumstances, a court's decision to consider dispositive motions before or after a ruling on class certification depends greatly on the individual circumstances of the particular case."); id. § 7:10 at 48-58 (discussing factors to evaluate timing of class certification to summary judgment). Our conclusion in this case should not be read as an endorsement of delayed class certification. We accord great deference to a Superior Court justice's decision to certify a class. DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474, 487-88 (R.I. 2004) ("A trial court's decision to certify a class is accorded great deference and will not be disturbed unless the trial court misconceived material evidence, substantially abused its discretion or was otherwise clearly wrong."). Given the long duration of this case, however, we must remind the parties that Rule 23(c)(1) of the Superior Court Rules of Civil Procedure contains a timeliness requirement. See Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249, 1262 n.16 (R.I. 2003) (discussing timeliness requirement). While we previously have looked to Rule 23 of the Federal Rules of Civil Procedure for interpretative guidance, we also note that this state has not adopted the 2003 amendments to the federal rule, with its more liberal timeliness requirement. Compare Super. R. Civ. P. 23(c)(1) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."), with Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class

representative, the court must determine by order whether to certify the action as a class action."). But cf. 3 Rubenstein, § 7:5 at 24 ("By excising the 'as soon as' formulation, the new language gives courts more time to address certification, bringing the rule in line with what had become a de facto practice even under the older, more urgent language.").

## Analysis

## I

## Motion for Summary Judgment

## Negligence

In count 2 of the complaint, plaintiffs allege that Dell breached its duty "to properly calculate and collect sales tax * * * due on purchases made by Rhode Island residents and businesses." The defendants argue that no such duty exists, and, therefore, the Superior Court justice properly granted summary judgment to defendants on count 2.

"To properly set forth a claim for negligence, a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." Brown v. Stanley, 84 A.3d 1157, 1161-62 (R.I. 2014) (quoting Willis v. Omar, 954 A.2d 126, 129 (R.I. 2008)). If a defendant does not owe a legal duty to the plaintiff, then the defendant cannot be liable for negligence. Id. at 1162.

"It is well settled that '[w]hether a defendant is under a legal duty in a given case is a question of law.'" Brown, 84 A.3d at 1162 (quoting Willis, 954 A.2d at 129). We assess the question of legal duty on a case-by-case basis, and we examine "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the

- 12 -

defendant, public policy considerations, and notions of fairness." Gushlaw v. Milner, 42 A.3d 1245, 1252 (R.I. 2012) (quoting Volpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003)).

The provision of the General Laws that imposes a sales tax provides that a tax "is imposed upon sales at retail" and "is paid to the tax administrator by the retailer at the time and in the manner provided." G.L. 1956 § 44-18-18. The state further effectuates the payment of taxes by retailers through a number of penalties for failure to properly remit sales taxes to the state. See, e.g., G.L. 1956 § 44-19-12 (10 percent penalty for deficiency "due to negligence or intentional disregard of [sales and use tax provisions]"); § 44-19-31 (A retailer may be, "in addition to any other penalties in this chapter or elsewhere prescribed, guilty of a felony, punishment for which is a fine of not more than ten thousand dollars ($10,000), or imprisonment for one year, or both."). Thus, the retailer's duty with regard to the tax is to the tax administrator, not the consumer.

The plaintiffs contend that G.L. 1956 § 44-18.1-26, entitled "Customer refund procedures," "constitutes a legislative acknowledgement that Rhode Island law already allow[ed] a purchaser to seek a return of over-collected sales or use tax from the seller." Section 44-18.1-26 provides:

> "Customer refund procedures.
>
> "(A) These customer refund procedures are provided to apply when a state allows a purchaser to seek a return of over-collected sales or use taxes from the seller.
>
> "(B) Nothing in this section shall either require a state to provide, or prevent a state from providing, a procedure by which a purchaser may seek a refund directly from the state arising out of sales or use taxes collected in error by a seller from the purchaser. Nothing in this section shall operate to extend any person's time to seek a refund of sales or use taxes collected or remitted in error.
>
> "(C) These customer refund procedures provide the first course of remedy available to purchasers seeking a return of over-

collected sales or use taxes from the seller. A cause of action against the seller for the over-collected sales or use taxes does not accrue until a purchaser has provided written notice to a seller and the seller has had sixty days to respond. Such notice to the seller must contain the information necessary to determine the validity of the request.

"(D) In connection with a purchaser's request from a seller of over-collected sales or use taxes, a seller shall be presumed to have a reasonable business practice, if in the collection of such sales or use taxes, the seller: (i) uses either a provider or a system, including a proprietary system, that is certified by the state; and (ii) has remitted to the state all taxes collected less any deductions, credits, or collection allowances."

This provision—a section of the uniform Streamlined Sales And Use Tax Agreement—does not apply to this case, the events of which took place in 2000, because it was not enacted until 2006 and became effective in 2007. See P.L. 2006, ch. 246, art. 30, §§ 12, 21. Even if § 44-18.1-26 did apply, it merely provides a procedural mechanism to seek recovery; the act did not establish a new legal tort duty.[11]

The public policy of the state is to collect taxes that are due and owing. As discussed above, the General Assembly has chosen to compel retailers to collect the appropriate amount of taxes by imposing penalties for failure to remit the proper amount of sales tax. If this Court recognized the duty proposed by plaintiffs, the result would be an opposing incentive to under-collect sales taxes when the tax law is unclear. This, in turn, would lead to a decrease in the amount of taxes collected by the state, in contravention of the state's interest in receiving revenue. Furthermore, the over-collection of sales taxes by retailers is rarely a problem. Retailers are under economic pressure to minimize the total price paid by the consumer. A charge of more sales tax than required typically serves no business purpose—it increases the

---

[11] Notably, plaintiffs did not follow the requisite procedure by providing the written notice required in G.L. 1956 § 44-18.1-26(C); this is understandable, however, because the statute did not exist at the time.

- 14 -

price to consumers (thus making them less likely to buy the product), and it does not increase the profits of the businesses because the money collected is simply remitted to the state.

Finally, notions of fairness also favor our conclusion that a retailer does not owe a duty to consumers to properly collect sales tax. As discussed above, retailers already owe a duty to the state and are subject to penalties for under-collection. It would be untenable to make retailers subject to state penalties for under-collection and civil suit for over-collection. Such a policy would force retailers to be perfectly accurate in their tax calculations or face legal action. Given the complexity of tax law, which is rife with nuance and exceptions, it would be unfair to subject retailers to this additional duty.

Accordingly, we are satisfied that defendants did not owe a legal duty to plaintiffs regarding the collection of taxes, and therefore plaintiffs cannot establish the tort of negligence. The Superior Court justice properly granted defendants' motion for summary judgment as to count 2.

## Deceptive Trade Practices Act

The heart of this case is plaintiffs' DTPA claim. The plaintiffs allege that Dell's collection of sales tax on service contracts constituted an unfair and deceptive trade practice under the DTPA. Dell argues that its practice of charging sales tax was neither unfair nor deceptive and that it was merely following its understanding of Rhode Island tax law at the time. The Superior Court justice granted summary judgment to defendants on plaintiffs' DTPA claim.

The DTPA provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." Section 6-13.1-2. To redress such unlawful practices, the DTPA provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any

ascertainable loss of money or property, real or personal * * *." Section 6-13.1-5.2(a). The statute also permits a class action. Section 6-13.1-5.2(b). "It is clear that in enacting the DTPA, the Legislature intended to declare unlawful a broad variety of activities that are unfair or deceptive, as well as to provide a remedy to consumers who have sustained financial losses as a result of such activities." Park v. Ford Motor Co., 844 A.2d 687, 692 (R.I. 2004). Thus, "[t]he DTPA is a remedial act and it should be liberally construed." Long, 984 A.2d at 1081.

This Court has stated that "a plaintiff must establish that he or she is a consumer, and that defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce." Kelley v. Cowesett Hills Associates, 768 A.2d 425, 431 (R.I. 2001). In the DTPA, the General Assembly provided interpretive guidance by declaring that "due consideration and great weight shall be given to the interpretations of the federal trade commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act." Section 6-13.1-3. Different analyses have developed regarding what constitutes an "unfair" practice and a "deceptive" practice, and we discuss them seriatim.

**1. Unfair**

To determine whether a trade practice is "unfair" under the DTPA, this Court has stated that the following factors apply:

> "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise— whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Ames v. Oceanside Welding

- 16 -

and Towing Co., 767 A.2d 677, 681 (R.I. 2001) (quoting FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972)).[12]

The plaintiffs need not establish every factor, and they may prove unfairness by showing that a trade practice meets one factor to a great degree or two or three factors to a lesser degree. See Cheshire Mortgage Service, Inc. v. Montes, 612 A.2d 1130, 1143-44 (Conn. 1992) ("All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.") (quoting Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59,614 and 59,635 (1978)).

---

[12] The Superior Court justice applied these factors, and both parties present their DTPA arguments in their briefs by applying these factors. Therefore, we will apply these factors here. Nevertheless, we pause to note that the Federal Trade Commission (FTC) adjusted its interpretation of unfairness in a 1980 Policy Statement. See FTC Policy Statement on Unfairness, appended to In re International Harvester Co., 104 F.T.C. 949, 1070 (1984). Additionally, in 1994, Congress further defined the FTC's role in determining an unfair trade practice:

"Standard of proof; public policy considerations

"The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination." 15 U.S.C. § 45(n).

What effect the FTC's 1980 policy statement and 15 U.S.C. § 45(n) have on the unfairness analysis is not before us.

Addressing the first factor, the Superior Court justice concluded that Dell's collection of sales tax on a nontaxable item offended public policy. We agree. Statutes passed by the Legislature are the state's declaration of public policy. Thus, acting in contravention of those laws, as Dell clearly did, violates public policy.[13]

Regarding the second factor, the Superior Court justice concluded that Dell's actions were not "immoral, unethical, oppressive, or unscrupulous." The Superior Court justice accepted Dell's argument that "the charge of sales tax on the optional service contract sold to Ricci was a good faith, reasonable interpretation of the tax law and regulations in effect." Further, he stated that "Dell's honest misinterpretation of a delicate area of the state tax law cannot be held to be an unfair act." Dell takes this conclusion even a step further in its brief by arguing that the DTPA requires evidence of bad faith. This is incorrect. The DTPA does not require a showing of bad faith. It only requires an "unfair or deceptive" act or practice. Section 6-13.1-2. While trade practices undertaken in bad faith are also likely to be unfair or deceptive, bad faith is not the statutory standard.[14]

Whether Dell's sales tax calculation and collection practice was in good faith and resulted in an honest misinterpretation is a question of material fact. Dell certainly can argue to a jury that it was acting under a good faith interpretation of tax law and therefore its conduct was not unfair. However, a jury could also draw the inference that Dell's efforts to avoid its own tax nexus with Rhode Island unfairly resulted in consumers being charged for taxes that they should

---

[13] We note that, on appeal, Dell did not challenge the Superior Court justice's determination that it was improper for Dell to charge Ricci a tax on the optional service contract.

[14] "Bad faith" is defined as "[t]he malicious intention to be dishonest or to violate the law, as in negotiations over a contract." American Heritage Dictionary of the English Language 133 (5th ed. 2011). Neither "unfair" itself nor its elaborative siblings—immoral, unethical, oppressive, or unscrupulous—carry a connotation of malice necessary to show "bad faith."

not have been charged.[15] Although taking steps to avoid a tax nexus to the state is not illegal, if those steps include overcharging consumers in order to achieve that goal, a factfinder can determine the weight of such evidence on the ultimate question of whether Dell's trade practice was unfair under the DTPA.

Additionally, the record contains internal records from Dell which make clear that Dell allocated a certain value to the service contracts. Yet, Dell chose not to clearly list that value in its acknowledgments sent to consumers. Nevertheless, Dell charged a sales tax on only the service contract value, and not the full purchase price. We note that a consumer could take a number of steps to figure out the service contract price: on the acknowledgement, the line items for the service contract include asterisks; the asterisk denotes, "service contract may be subject to sales tax"; and the first page of the acknowledgment states, "Dell Catalog Sales collects tax only in FL, KY, NC, NV, TN & TX. For other states the tax shown relates only to 3rd party service contracts and the buyer is responsible for remitting any additional tax directly to the taxing authorities."[16] But it is for a jury to decide which inference to draw from Dell's decision not to state clearly the service contract price on its acknowledgment. Indeed, a factfinder could conclude that Dell deliberately omitted the price of that item, resulting in a tax to the consumer in order to avoid a tax nexus for its own products. Accordingly, under the second factor in Ames, a jury could find that Dell's improper collection of sales tax was immoral, unethical, oppressive, or unscrupulous. See Ames, 767 A.2d at 681; see also Long, 984 A.2d at 1081

---

[15] Dell did not have a tax nexus to Rhode Island and therefore was not registered with the Department of Taxation. However, BancTec, a third party contractor that serviced Dell products under optional service contracts purchased by Dell's customers, did have a tax nexus to Rhode Island. Under agreements between Dell and BancTec, Dell was required to collect any applicable sales and use tax on BancTec's behalf.

[16] It was this combination of information that led the letter ruling to conclude that the service contract price was, in fact, separately stated for tax collection purposes.

(noting liberal construction of DTPA); Park, 844 A.2d at 692 (noting legislative intent "to declare unlawful a broad variety of activities that are unfair or deceptive").

Regarding the third factor, the Superior Court questioned whether Ricci's $16.31 loss constituted a substantial injury. Our conclusion regarding the standard of review becomes crucially important on this point. If the only injury to be considered in the light most favorable to plaintiff was $16.31, we may well agree with the Superior Court justice. However, because we treat the class as certified for purposes of drawing reasonable inferences in favor of the nonmoving party, and viewing evidence in the most favorable light to the nonmoving party, we will consider the evidence in the record of potential injury to the class. Chavers, 844 A.2d at 679 n.12. The record contains multiple claims filed with the tax administrator for refunds of sales taxes remitted by multiple defendants. Dell Marketing LP claimed a refund of $900,000 for the period October 1, 2001 to December 31, 2003. BancTec, Inc. claimed a refund of $540,454 for the period October 1, 2001 to December 31, 2003. QualxServ, LLC claimed a refund of $145,451.07 for the period January 1, 2002 to October 30, 2004. All of these refund claims were prepared by the same attorney and all contained an explanation that they were "protective claim[s]" related to the outcome of this litigation. Accordingly, viewing the evidence in the light most favorable to the nonmoving party, a factfinder could infer an injury of over $1 million to the class. An injury of such monetary magnitude certainly qualifies as substantial.[17]

---

[17] The dissent draws a distinction between treating the plaintiff class as certified for purposes of summary judgment (on which the dissent takes no position) and aggregating the damages of the plaintiff class (on which the dissent disagrees). First, we reiterate that the aggregation to which the dissent refers is not automatic or culled out of thin air; an inference of class-wide injury can be drawn from competent evidence before the trial justice. Regardless, if the class is treated as certified, for purposes of viewing the evidence in the light most favorable to the nonmoving party on summary judgment, an inference of class-wide injury should be drawn when competent evidence permits. Under the dissent's view, a named plaintiff in a class action must provide evidence that he or she individually suffered "substantial" injury by a trade practice of the

- 20 -

Therefore, a factfinder could conclude that Dell's sales tax calculation and collection practice offended public policy, was immoral, unethical, oppressive, or unscrupulous, and caused substantial injury to consumers. Given that all three factors could weigh in favor of plaintiffs, a factfinder could conclude that the trade practice was unfair under the DTPA.

## 2. Deceptive

Although this Court has not defined a "deceptive" act or practice under the DTPA, we are statutorily required to accord great weight to the FTC's interpretation of § 5(a) of the Federal Trade Commission Act, and therefore we adopt that standard. Section 6-13.1-3. Therefore, to prove that a trade practice is deceptive under the DTPA, a plaintiff must set forth three elements: "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material."[18] F.T.C. v. Verity International, Ltd., 443 F.3d 48, 63 (2d Cir. 2006) (quoting In re Cliffdale Associates, Inc., 103 F.T.C. 110, 165 (1984)). "The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably." Id.

The Superior Court justice found that "Dell represented that there was sales tax, misleading the consumers who paid the tax," but that the sales tax portion of the purchase price was not material under the DTPA because it had no effect on Ricci's choice to purchase the product. Thus, the Superior Court justice found that Dell's sales tax collection practice was not deceptive under the DTPA. The plaintiffs argue that Dell's trade practice was material because it

defendant. This confounds the injury-in-fact requirement for standing—which is satisfied by Ricci's $16.31 injury—and the substantial injury prong of the DTPA analysis, and effectively eliminates the possibility of a class action under the DTPA surviving summary judgment prior to certification.

[18] The Superior Court justice applied this standard, and neither party on appeal suggests that another standard should apply.

- 21 -

affected how much Ricci would have to pay. Dell argues that charging the tax was not likely to mislead consumers, and it was not material.

We agree with the Superior Court justice that Dell's charge of the sales tax was a representation likely to mislead consumers acting reasonably under the circumstances. Dell represented that there was a sales tax on the service contract. That representation misled Ricci to pay the sales tax, when none was in fact due.

Regarding the third element, a representation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." F.T.C. v. Patriot Alcohol Testers, Inc., 798 F. Supp. 851, 855 (D. Mass. 1992) (quoting Cliffdale Associates, Inc., 103 F.T.C. at 165). Importantly for this case, "[e]xpress representations that are shown to be false are presumptively material." Id. (citing Cliffdale Associates, Inc., 103 F.T.C. at 168, 182). Here, Dell made the express representation that sales tax was due on the service contract portion of Ricci's purchase. But that representation was false. Therefore, Dell's representation presumptively is material.

Dell points out that Ricci testified in her deposition that she was most concerned with the bottom-line price rather than the amount of the sales tax. And if she had properly been charged, i.e., charged no tax, the price would have been lower, thus making her more likely to buy the product. Nevertheless, on summary judgment, these factors are insufficient to rebut the presumption of a material misrepresentation. Viewing the evidence in the light most favorable to plaintiff, the proper amount of sales tax is "information that is important to consumers," and defendants' trade practice affected plaintiffs' conduct regarding the product—the total price paid for it. See Patriot Alcohol Testers, Inc., 798 F. Supp. at 855 (quoting Cliffdale Associates, Inc.,

103 F.T.C. at 165). Accordingly, a factfinder could conclude that the practice was deceptive under the DTPA.

Because a factfinder could conclude that Dell's practice of charging sales tax on service contracts was unfair or deceptive under the DTPA, we vacate the grant of summary judgment on count 1 of the complaint.

### Requests for Injunctive and Declaratory Relief

In Long, 984 A.2d at 1078, we noted that "plaintiffs conceded that Mr. Long could not bring a DTPA claim because his purchase was made for a business purpose." We also acknowledged that the Superior Court justice dismissed Long's claims to "the extent he sought damages arising from Dell's alleged negligence," but that "[i]t is possible that Mr. Long may have a claim for equitable or declaratory relief—an issue that is not before us." Id. at 1078 n.8. In the case at bar, the Superior Court justice addressed the issue of equitable relief on summary judgment, and he found that "[p]laintiffs' prayer that the Court enjoin [d]efendants from collecting the allegedly improper taxes is moot, as Dell no longer collects [such taxes]."

The plaintiffs here allege only two counts—DTPA and negligence. Long's concession that he has no DTPA claim because he purchased his computer for business purposes, Long, 984 A.2d at 1078, and our conclusion herein that summary judgment properly was granted on the negligence count, signal the end to Long's case because neither cause of action remains.

An injunction is a remedy, not a cause of action. See Thompson v. JPMorgan Chase Bank, N.A., No. 13-2230, 2014 WL 1586992, at *1 n.1 (6th Cir. Apr. 22, 2014) ("'Injunctive relief' is not a cause of action, it is a remedy."); Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 46 (D. Mass. 2013) ("An injunction is not a cause of action, but a remedy."); see also Davis v. Passman, 442 U.S. 228, 239-40 n.18 (1979) (noting that a "cause of action is a question of

whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and <u>relief</u> is a question of the various remedies a federal court may make available"). Because Long has no underlying cause of action remaining, he has no right to seek the remedy of injunctive relief. Furthermore, the request for declaratory relief in the complaint requested a declaration that Dell's practices were unfair or deceptive under the DTPA, were unlawful under the DTPA, and were breaches of Dell's duty to properly calculate and collect sales tax. Because that request for declaratory relief relates solely to underlying rights or causes of action unavailable to Long, he may not pursue a declaratory judgment. Accordingly, the Superior Court justice properly dismissed Long's requests for declaratory and injunctive relief. Ricci, however, may be entitled to seek declaratory or injunctive relief because, as discussed above, her DTPA claim survives, and "[t]he DTPA provides a private right of action to recover * * * equitable relief for violations of its provisions." <u>Long</u>, 984 A.2d at 1080-81 (quoting <u>Chavers</u>, 844 A.2d at 670).

## II

## Motion to Strike

In a separate appeal, the tax administrator challenges the Superior Court justice's grant of a motion to strike the tax administrator's affirmative defenses. The Superior Court justice struck the defenses as immaterial under Rule 12(f) of the Superior Court Rules of Civil Procedure because no claims had been asserted against the tax administrator, and because the conditions precedent to the allegedly conditional defenses had not arisen in this case. The tax administrator argues that his affirmative defenses improperly were stricken.

Our discussion begins by addressing the standard of review; this Court has yet to declare the standard under which we will review a motion to strike in accordance with Rule 12(f). The

plaintiffs contend that this Court should review a grant of a motion to strike for an abuse of discretion. The tax administrator argues that the standard of review is de novo.

Rule 12(f) provides: "the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." This Court has stated that, "where the Federal rule and our state rule are substantially similar, we will look to the Federal courts for guidance or interpretation of our own rule." Heal v. Heal, 762 A.2d 463, 466-67 (R.I. 2000) (citing Smith v. Johns-Manville Corp., 489 A.2d 336 (R.I. 1985)). Rule 12(f) of the Federal Rules of Civil Procedure is nearly identical to our state rule. See Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

Federal circuit courts hold that the standard of review of a Rule 12(f) motion to strike is abuse of discretion. See, e.g., Branch Banking and Trust Co. v. Lichty Bros. Construction, Inc., 488 F. App'x 430, 434 n.2 (11th Cir. 2012) ("We review a district court's decision to strike any defenses that are insufficient as a matter of law for abuse of discretion."); Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) (noting that "Rule 12(f) motions are reviewed for 'abuse of discretion'") (quoting Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000)); Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 178 (5th Cir. 2007) ("This court reviews a motion to strike for abuse of discretion."); Hatchett v. United States, 330 F.3d 875, 887 (6th Cir. 2003) ("We review the grant of a motion to strike a pleading for abuse of discretion."); Nationwide Insurance Co. v. Century Missouri Electric Cooperative, Inc., 278 F.3d 742, 748 (8th Cir. 2001) ("Because a district court enjoys liberal discretion under Rule 12(f), * * * we review this claim for an abuse of discretion."). Therefore, we will review this motion to strike under the abuse of discretion standard.

This is not a tax case, as we already have stated:

> "This is a negligence action coupled with a claim alleging deceptive trade practices. Here, the gravamen of plaintiffs' complaint is whether Dell (not the tax administrator) committed a deceptive trade practice by collecting taxes on the purchase of optional service contracts. The plaintiffs argue that these service contracts are not taxable in Rhode Island and that Dell, not the tax administrator, ignored the relevant statutes and regulations when it collected the tax. The fact that Dell may have paid over the money to the Division of Taxation does not change this result." Long, 984 A.2d at 1080.

This case is about allegedly unfair or deceptive trade practices brought against Dell under the DTPA. While tax issues are implicated by the nature of plaintiffs' DTPA claim, no party has filed a claim against the tax administrator in this case. Although some defendants have filed "protective" claims for refunds with the tax administrator, those claims are, or may become, separate cases with different standards and can be reviewed under the appropriate procedures when (or if) a decision in the case before us is made adverse to Dell. Because there are no claims against the tax administrator, there is nothing for the tax administrator to raise as an affirmative defense.

Furthermore, the tax administrator's intervention in this case was limited; the Superior Court justice permitted the tax administrator to intervene "for the purpose of appearing and being heard on the issues of subject-matter jurisdiction, the proper interpretation and construction of tax regulations and statutes, and the application and constitutional validity of tax statutes." This Court already has decided the subject-matter jurisdiction issue, and there is no challenge to the constitutional validity of the tax statutes. Thus, although the tax administrator may still appear and be heard on the proper interpretation, construction, and application of tax regulations and statutes, to the extent that these issues become germane, he may not defend against claims that are illusory in the context of this case. The maintenance of these affirmative defenses only

- 26 -

distracts the parties from the real remaining issue in this case—whether Dell's practice of collecting sales tax on service contracts was an unfair or deceptive trade practice.

We pause to note that the tax administrator cannot be collaterally estopped from raising any defenses that he was precluded from asserting in this case. The resolution of the tax refund claims is a separate matter. If a party files a claim against the tax administrator in this case, obviously, he may file an answer and assert affirmative defenses appropriate for the claims asserted. But unless and until that time comes, the tax administrator's affirmative defenses are immaterial. See Super. R. Civ. P. 12(f). Accordingly, the Superior Court justice did not abuse his discretion by striking the tax administrator's affirmative defenses.

### Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court justice's rulings on count 2, negligence, and the declaratory and injunctive relief claims. We also affirm the Superior Court justice's order striking the tax administrator's affirmative defenses. However, we vacate the Superior Court justice's ruling on count 1 (DTPA), and we remand the case to the Superior Court.

**Justice Robinson, concurring in part and dissenting in part.** I am pleased to be able to concur with the majority's ruling concerning: (1) its affirmance of the Superior Court's grant of summary judgment in Dell's favor on count 2 of the complaint (negligence); (2) its affirmance of the Superior Court's dismissal of the requests of plaintiff Nicholas T. Long for injunctive and declaratory relief; and (3) its affirmance of the Superior Court's granting of plaintiffs' motion to strike the tax administrator's affirmative defenses. However, as for the majority's vacating the Superior Court's granting of Dell's motion for summary judgment on count 1 of the complaint (alleging violation of the Deceptive Trade Practices Act), I must respectfully, but very vigorously, record my dissent. Taking into account settled principles of law as well as the plain meaning of the following words—immoral, unethical, oppressive, unscrupulous, and material—I am convinced that no reasonable jury could conclude that Dell violated the Deceptive Trade Practices Act (DTPA).

I have on several prior occasions insisted on (and I remain committed to) the principle that the courts should be chary about too unreflectingly disposing of cases pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. See, e.g., DeMaio v. Ciccone, 59 A.3d 125, 129 (R.I. 2013); Pichardo v. Stevens, 55 A.3d 762, 765-66 (R.I. 2012); Employers Mutual Casualty Co. v. Arbella Protection Insurance Co., 24 A.3d 544, 553 (R.I. 2011); Shelter Harbor Conservation Society, Inc. v. Rogers, 21 A.3d 337, 346 (R.I. 2011).

However, being "chary" in that regard is not the equivalent of rendering Rule 56 entirely nugatory. In my judgment, there is absolutely nothing in the record before us that would justify a reasonable jury rendering a verdict for Ms. Ricci; and, as such, I am of the decided opinion that the hearing justice did not err when he granted Dell's motion for summary judgment on Ms. Ricci's DTPA claim. Because the DTPA is violated if a practice is either "unfair or deceptive," I

shall address the majority's opinion as to each of those terms seriatim. See G.L. 1956 § 6-13.1-2 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.") (emphasis added).

With respect to whether or not Dell's actions in the instant case could be found by a reasonable jury to have been unfair, I most particularly take issue with the majority's determination that it is possible for a reasonable jury to find such actions "immoral, unethical, oppressive, or unscrupulous." Ames v. Oceanside Welding and Towing Co., 767 A.2d 677, 681 (R.I. 2001) (internal quotation marks omitted). One need only look to the definitions of those terms to determine that Dell's actions simply do not fall within their scope.[1] "Immoral" is defined as "[c]ontrary to established moral principles." The American Heritage Dictionary of the English Language 879 (5th ed. 2011). "Unethical" is obviously the antonym of "ethical," which is defined as "[b]eing in accordance with the accepted principles of right and wrong that govern the conduct of a profession * * * ." Id. at 610. "Oppressive" conduct is that which involves "[e]xercising power arbitrarily and often unjustly;" it is further defined as "tyrannical" and "[d]ifficult to cope with; causing hardship or depressed spirits * * * ." Id. at 1237. Finally, an

---

[1]  I note that this Court has on numerous occasions, in past opinions, relied on dictionary definitions to provide the plain meaning of certain words. See, e.g., Olamuyiwa v. Zebra Atlantek, Inc., 45 A.3d 527, 535 (R.I. 2012) ("It is well established that [w]hen * * * a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary.") (internal quotation marks omitted); Palin v. Palin, 41 A.3d 248, 250 n. 3, 251 n. 5 (R.I. 2012) (defining "aesthetics" and "[c]osmetology"); Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island, 31 A.3d 1263, 1269 (R.I. 2011) ("This meaning is consistent with the common sense, dictionary definition of 'public' with respect to expenditures."); In re Proposed Town of New Shoreham Project, 25 A.3d 482, 513 (R.I. 2011) ("When, as is the case here, a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary.") (internal quotation marks omitted). Indeed, not only does the majority opinion rely on a dictionary definition in footnote 14, but it actually relies on the same dictionary from which I have extracted the definitions on which I base my dissent.

action done "unscrupulous[ly]" is done in a manner "[h]aving or showing no regard for what is right or honorable; devoid of scruples." Id. at 1899.

After my review of the record and my consideration of the just-quoted definitions, I am in complete agreement with the hearing justice's statement that "Dell's honest misinterpretation of a delicate area of the state tax law cannot be held [by a reasonable jury] to be an unfair act." In my respectful but unblinking view, it defies common sense to contend that charging too much tax, in an effort to comply with (somewhat confusing)[2] state tax regulations, is somehow contrary to moral principles or is an arbitrary exercise of power. It defies logic even further to contend that Dell's actions were "tyrannical" or done with "no regard for what is right or honorable." It is clear to me beyond a peradventure that Dell was attempting to charge the appropriate tax in order to do what was right, honorable, ethical, and moral—namely, to pay the state of Rhode Island what it believed to be the appropriate amount of sales tax.

The majority opinion states that, while Dell can argue that it was operating under a "good faith interpretation of tax law," a jury could also infer that "Dell's efforts to avoid its own tax nexus with Rhode Island unfairly resulted in consumers being charged for taxes that they should not have been charged." Contrary to the stance adopted by my colleagues in the majority, I am completely unable to perceive any evidence presented by Ms. Ricci suggesting that Dell's actions were anything other than a "good faith interpretation of tax law." It is a settled legal principle that the party against whom a motion for summary judgment has been filed "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere

---

[2] I note that the interpretation of the tax regulations at issue was not fully clear until a letter ruling was obtained from the Division of Taxation on March 16, 2005—approximately five years after Ms. Ricci bought her Dell computer and the service contract, which form the basis of the instant case.

- 30 -

existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Classic Entertainment & Sports, Inc. v. Pemberton, 988 A.2d 847, 849 (R.I. 2010) ("In opposing a motion for summary judgment, the nonmoving party carries the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.") (internal quotation marks omitted). Ms. Ricci has failed to provide even such a "scintilla" of evidence; there is nothing in the record on which a reasonable jury could determine that Dell was acting in any way nefariously or underhandedly. Thus, summary judgment in Dell's favor, even where the issue of intent was arguably involved, was proper. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("The summary judgment rule would be rendered sterile * * * if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid [summary judgment] motion."); Brule v. Nerac, Inc., 13 A.3d 723, 727 (Conn. App. Ct. 2011) ("Although the determination of whether the parties intended to undertake a contractual commitment is generally a question of fact * * * when the proposed language could not reasonably be construed as a basis for a contractual promise, the issue should not be submitted to the trier of fact.").

Moreover, in what I consider to be a further departure from common sense, the majority perceives a possible deception and unfairness in a practice from which Dell does not profit one

whit.  DeFontes v. Dell, Inc., 984 A.2d 1061, 1063 (R.I. 2009) ("There is no allegation that Dell improperly retained any of the collected tax."); see State v. Bergevine, 883 A.2d 1158, 1159 (R.I. 2005) (mem.) ("'That seems to us to be the common sense of the matter; and common sense often makes good law.'") (quoting Peak v. United States, 353 U.S. 43, 46 (1957)).

For the reasons which I have just discussed, I must dissent from the majority's determination that a genuine issue of material fact remains with respect to whether Dell's actions were immoral, unethical, oppressive, or unscrupulous and, accordingly, unfair.[3]

Turning next to the majority's determination that a reasonable jury could have found Dell's actions to be deceptive, even if I were to accept that those actions are considered a "practice * * * likely to mislead consumers acting reasonably under the circumstances," I simply cannot agree that the actions were material—i.e., that they were likely to affect the consumer's choice.  F.T.C. v. Verity International, Ltd., 443 F.3d 48, 63 (2d Cir. 2006); see F.T.C. v. Patriot Alcohol Testers, Inc., 798 F. Supp. 851, 855 (D. Mass. 1992).   As was helpful in determining the issue of unfairness, a dictionary definition of "material" provides helpful contextual guidance in the present circumstance; and I note that "material" is defined as "[b]eing both relevant and consequential; crucial."  The American Heritage Dictionary of the English Language 1083 (5th ed. 2011).   Under that definition, even accepting the majority's statement that false representations are "'presumptively material,'" the dearth of evidence tending to show that

---

[3]      I recognize that, for the purposes of analyzing a claim under the DTPA, one is not necessarily required to prove every factor of the articulated standard.  Indeed, the majority opinion expressly acknowledges that point: "The plaintiffs need not establish every factor, and they may prove unfairness by showing that a trade practice meets one factor to a great degree or two or three factors to a lesser degree.  See Cheshire Mortgage Service, Inc. v. Montes, 612 A.2d 1130, 1143-44 (Conn. 1992) * * * ."  However, in my opinion, Dell's actions which form the basis of the DTPA claim at issue in the instant case are so obviously not immoral, unethical, oppressive, or unscrupulous that I consider that conclusion sufficient to establish that summary judgment in favor of Dell was appropriate.

Dell's actions were "relevant and consequential" because they affected a consumer's choice with respect to the product overcomes any such presumption. Ms. Ricci testified that she was concerned only with the full price of the computer and the service contract which she was purchasing—and not with the amount of tax being applied to her purchase. Therefore, Dell's act of charging an amount in taxes that was minimally excessive did not change Ms. Ricci's decision to purchase the computer. See Patriot Alcohol Testers, Inc., 798 F. Supp. at 855. As reflected in Ms. Ricci's own admission, she was not concerned with the amount of tax being charged. Ironically, had Dell charged the appropriate amount of tax, the overall price of Ms. Ricci's computer would have been lower, not higher, thus giving her a further incentive to purchase the computer. Therefore, contrary to the majority, I can perceive absolutely no evidence on which a reasonable jury could find Dell's actions to be deceptive.

In conclusion, based on our settled law with respect to summary judgment and the application of the plain meaning of English words, it is my opinion that the hearing justice acted appropriately when he determined, in ruling on Dell's motion for summary judgment, that there were no genuine issues of material fact and that Dell was entitled to judgment as a matter of law. See DeMaio, 59 A.3d at 129; see also Leavitt v. Correctional Medical Services, Inc., 645 F.3d 484, 503 (1st Cir. 2011) (stating that "[b]ased on [the previously described] series of events, no reasonable factfinder could conclude that [an employee of the defendant corporation] acted with deliberate indifference" and, consequently, affirming a grant of summary judgment in that employee's favor); Estate of Frusher v. ABT Associates, Inc., 643 F. Supp. 2d 220, 227 (D.R.I. 2009) (determining that, based on the evidence presented, a reasonable jury could not conclude that the decedent had an "unsound mind" and, that, therefore, summary judgment was appropriate); Empire Acquisition Group, LLC v. Atlantic Mortgage Co., 35 A.3d 878, 884 (R.I.

2012) (stating that "if the sequence of events in the case admits of only one reasonable [disposition], then the court should intervene and resolve the matter as a question of law") (internal quotation marks omitted).

For these reasons, I must respectfully, but very emphatically, dissent.[4]

---

[4] I raise a final concern, which, while not an actual basis of my dissent, is a point on which I find it important to opine. The majority opinion states that, for the purposes of summary judgment, it will treat the class in the instant case as if it had already been certified—which it has not been. (I explicitly decline to take a position as to the correctness vel non of that very broad interpretation of what Rule 56 of the Superior Court Rules of Civil Procedure permits.) As a consequence of that rather ipse dixit "as if" assumption, when the majority considers whether or not Ms. Ricci suffered a "substantial injury" for the purpose of determining whether Dell's actions were "unfair," it aggregates the damages suffered by the entire class; it states as follows:

> "If the only injury to be considered in the light most favorable to plaintiff was [Ms. Ricci's injury of] $16.31, we may well agree with the Superior Court justice. However, because we treat the class as certified for purposes of drawing reasonable inferences in favor of the nonmoving party, and viewing evidence in the most favorable light, we will consider the evidence in the record of potential injury to the class."

In my view, the majority's statement aggregating the damages of the entire class is completely inconsistent with established law with respect to class actions. One treatise summarizes as follows the state of American law in this regard:

> "Named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other members of the class that they purportedly represent. If a named plaintiff has not been injured by the wrong alleged in the complaint, then no case or controversy is presented, and the plaintiff has no standing to sue either on his or her own behalf or on behalf of a class. A plaintiff without a claim cannot be allowed to bring suit by making a class-action allegation. A representative cannot adequately represent a class when the representative does not state a valid cause of action." 59 Am.Jur.2d Parties § 61 at 507 (2012) (footnotes omitted).

It follows (from the just-quoted statement and the cases relied on by defendants, which the majority disregards—namely, Lewis v. Casey, 518 U.S. 343 (1996); Jackson v. Resolution GGF Oy, 136 F.3d 1130 (7th Cir. 1998); and Evans v. Taco Bell Corp., CIV. 04CV103JD, 2005 WL 2333841 (D.N.H. Sept. 23, 2005)) that, if a named plaintiff must state a valid claim, including

alleging an injury, then in a rare case like the one before us (where the amount of injury is a factor in meeting the requirements to prove the claim alleged), the named plaintiff must also individually meet those requirements.

I look to the 2003 Advisory Committee's Notes to Rule 23 of the Federal Rules of Civil Procedure, which, in addressing factors that could affect the timing of a class certification decision, stated: "The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified." See also 3 William B. Rubenstein, Newberg on Class Actions § 7:10 at 50 (2013); cf. 6A Federal Procedure, § 12:284 at 396 (Lawyers Ed. 2004) (stating that the failure by a district court to address the class action issue on a Fed. R. Civ. P. 12(b)(6) motion to dismiss "does limit the scope of the court of appeals' judgment in that, because no class of plaintiff or defendants is certified, * * * the plaintiffs' claims must be treated as being brought solely by the named plaintiffs against the named defendants"). The statement in the Advisory Committee Notes clearly contemplates that, when a motion for summary judgment is brought prior to the certification of the class, the motion for summary judgment is, with respect to the individual claims of the named plaintiffs, not those of the entire class. I further note that, in arguing to the contrary, the majority opinion cites to only one legal source in the paragraph that it devotes to the issue of "substantial injury;" that source does not discuss and is not relevant to the issue of "substantial injury." In fact, the majority opinion does not cite to any direct source anywhere in support of its apparent conclusion that, if a class were to be treated as having been certified for the purposes of summary judgment, the damages could then be aggregated.

Moreover, the majority's holding muddies the waters with respect to who is bound by a Superior Court's grant of summary judgment in a defendant's favor prior to a ruling on class certification. See 6A Federal Procedure, § 12:276 at 377 (stating the typical rule that, if a motion for summary judgment is "granted before a class is certified, the ruling binds only the individual parties"); see also id. § 12:404 at 561 ("A summary judgment entered in favor of the party opposing a class will not bind absent class members * * * prior to a class action determination. However, if a summary judgment is granted to the party opposing the class after the class has been certified * * * the judgment will have classwide res judicata effect on all those class members who do not opt out of the class upon being provided with notice.").

For the foregoing reasons, it is my opinion that, in accordance with the law on class actions and irrespective of the majority's having, for the purposes of summary judgment, treated the class as having been certified, the named plaintiff representing the class must individually meet the requirements for stating a claim under the DTPA, including (as one factor) whether he or she sustained a "substantial injury."

In order to make clear my exact line of reasoning, I reiterate that I explicitly decline to opine on the propriety of the majority's decision to treat the plaintiff class as if it had been certified. For that reason, I need not contend with Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666 (R.I. 2004), which is cited by the majority. The opinion in Chavers is used by the majority only to support its decision to treat the plaintiff class as having been certified; Chavers does not support, and indeed could not support, the portion of the majority opinion with which I take issue; my point, succinctly stated, is that the majority errs in aggregating the damages of the potential plaintiff class, regardless of whether or not the majority treats the plaintiff class as having been certified.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Nicholas T. Long et al. v. Dell, Inc., et al.

**CASE NO:** No. 2012-248-Appeal.
No. 2012-249-Appeal.
(PB 03-2636)

**COURT:** Supreme Court

**DATE OPINION FILED:** June 27, 2014

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Plaintiffs: Joseph Makalusky, Pro Hac Vice
Edward Rapacki, Pro Hac Vice

For Defendants: John Shope, Pro Hac Vice
Bernard J. Lemos, Esq., Intervenor